# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KATHERINE FINGER,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>INTRICON CORPORATION, NICHOLAS A. GIORDANO, MARK GORDER, RAYMOND HUGGENBERGER, SCOTT LONGVAL, KATHLEEN PEPSKI, HEATHER RIDER, and PHILIP SMITH,<br><br>　　　　　　Defendants. | Case No. _____<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>JURY TRIAL DEMANDED |

Plaintiff Katherine Finger ("Plaintiff"), by and through her undersigned counsel, for her complaint against defendants, alleges upon personal knowledge with respect to herself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE AND SUMMARY OF THE ACTION

1. This is a stockholder action brought by Plaintiff against Intricon Corporation ("Intricon" or the "Company") and the members of Intricon's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. §240.14a-9 ("Rule 14a-9"), in connection with the Board's attempt to sell Intricon to affiliates of Altaris Capital Partners, LLC (collectively with its affiliates, "Altaris") (the "Proposed Transaction").

2. On February 27, 2022, Intricon entered into an Agreement and Plan of Merger with IIN Holding Company LLC and IC Merger Sub Inc., affiliates of Altaris Health Partners V, L.P. and Altaris Health Partners V-A, L.P., which are managed by Altaris (the "Merger Agreement"). Pursuant to the terms of the Merger Agreement, Altaris will acquire Intricon for $24.25 in cash for each Intricon common share.

3. On April 25, 2022, the Board authorized the filing of the materially incomplete and misleading Schedule 14A Definitive Proxy Statement (the "Proxy Statement") with the SEC. Specifically, the Proxy Statement, which recommends that Intricon stockholders vote their shares in favor of the Proposed Transaction, contains materially incomplete and misleading information concerning, among other things: (i) the Company's financial projections and the financial analyses that support the fairness opinion provided by the Company's financial advisor, Piper Sandler & Co. ("Piper Sandler"); (ii) potential conflicts of interest faced by Piper Sandler and Company insiders; and (iii) the "go-shop" process.

4. The failure to adequately disclose such material information constitutes a violation of Sections 14(a) and 20(a) of the Exchange Act as Intricon stockholders need such information in order to make a fully informed decision in connection with the Proposed Transaction.

5. The special meeting for Intricon stockholders to vote on the Proposed Transaction is currently scheduled for May 24, 2022. It is imperative that such Exchange Act violations are promptly cured to enable Plaintiff and Intricon's other shareholders to make an informed decision whether to vote their shares in favor of the Proposed Transaction. Therefore, Plaintiff seeks to enjoin the stockholder vote unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

7. Personal jurisdiction exists over the defendants because each defendant either conducts business in or maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because defendants are found or are inhabitants or transact business in this District. Intricon's common stock trades on the Nasdaq Global Market, which is headquartered in this District, rendering venue in this District appropriate.

## THE PARTIES

9. Plaintiff is, and has been at all relevant times, the owner of shares of Intricon common stock.

10. Defendant Intricon is a Pennsylvania corporation, with its principal executive offices located at 1260 Red Fox Road, Arden Hills, Minnesota 55112. Intricon's shares trade on the Nasdaq Global Market under the ticker symbol "IIN."

11. Defendant Nicholas A. Giordano has been a director of the Company at all relevant times.

12. Defendant Mark Gorder ("Gorder") has been a director of the Company at all relevant times.

13. Defendant Raymond Huggenberger has been a director of the Company at all relevant times.

14. Defendant Scott Longval ("Longval") has been President, Chief Executive Officer and a director of the Company at all relevant times.

15. Defendant Kathleen Pepski has been a director of the Company at all relevant times.

16. Defendant Heather Rider has been a director of the Company at all relevant times.

17. Defendant Philip Smith ("Smith") has been Chairman of the Board and a director of the Company at all relevant times.

18. Defendants identified in paragraphs 11-17 are collectively referred to herein as the "Board" or the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background of the Company

19. Founded in 1930, Intricon, together with its subsidiaries, designs, develops, engineers, manufactures, and distributes body-worn devices in the United States, Europe, Asia, and internationally. The Company offers micro-miniature products, microelectronics, micro-mechanical assemblies, high-precision injection-molded plastic components, and assemblies and software solutions for medical devices, hearing healthcare, and professional audio communication devices markets. Intricon also provides micro coils for surgical navigation clinical applications, joint engineering and manufacturing services for complex medical devices, bubble sensors and flow restrictors that monitor and control the flow of fluid in an intravenous infusion system, and safety needle products for original equipment manufacturing customers. The Company also offers professional audio headset products used for emergency response needs in the fire, law enforcement, safety, aviation, and military markets, as well as a line of miniature ear- and head-

worn devices used by performers and support staff in the music and stage performance markets. Intricon sells its hearing device products and medical and professional audio communications products directly to hearing instrument manufacturers, distributors, and partnerships. In addition, it sells its microphone products to the radio communication and professional audio industries, as well as markets and sells hearing aid devices directly to consumers through direct mail advertising, Internet, and call center.

**The Proposed Transaction**

20. On February 28, 2022, Intricon announced that it had entered into the Proposed Transaction, stating, in relevant part:

> ARDEN HILLS, Minn., Feb. 28, 2022 -- **Intricon Corporation (NASDAQ: IIN)**, an international joint development manufacturer engaged in designing, developing, engineering, manufacturing, and packaging miniature interventional, implantable and body-worn medical devices, today announced that it has entered into a definitive agreement whereby an affiliate of Altaris Capital Partners, LLC (collectively with its affiliates, "Altaris"), an investment firm focused exclusively on the healthcare industry, will acquire the company. Under the terms of the agreement, Altaris will acquire all outstanding shares of Intricon for $24.25 per share in a transaction that values Intricon at an equity value of approximately $241 million. The purchase price represents a meaningful premium of approximately 39% to Intricon's closing stock price on February 25, 2022.
>
> "We are excited to enter into this transaction with Altaris, which will deliver a compelling valuation to our shareholders and enable us to accelerate the advancement of our joint development manufacturing capabilities in micromedical technology across a broad range of high growth markets," said Scott Longval, President and Chief Executive Officer. "Our team has done an outstanding job of establishing Intricon as the partner of choice for companies that are bringing truly advanced technology to medical devices. As we enter the next chapter for our company, we believe that Altaris is the ideal partner to help us further advance our mission."
>
> **Transaction Details**
>
> Under the terms of the agreement, Intricon shareholders will receive $24.25 in cash for each share of Intricon common stock they own. The transaction has fully committed financing from funds affiliated with Altaris.

Intricon's Board of Directors has unanimously approved the merger agreement with Altaris and recommends that Intricon shareholders approve the proposed merger and merger agreement. Intricon expects to hold a Special Meeting of Shareholders to consider and vote on the proposed merger and the merger agreement as soon as practicable after the mailing of the proxy statement to its shareholders. The transaction is expected to close in the second quarter of 2022, subject to customary closing conditions, including approval by Intricon shareholders and receipt of regulatory approvals. Upon completion of the transaction, Intricon will become a private company and Intricon shares will no longer be listed on any public market.

Under the terms of the merger agreement, Intricon may solicit superior proposals from third parties for a period of 35 days continuing through April 3, 2022, and in certain cases for a period of 45 days continuing through April 13, 2022. In accordance with the merger agreement, Intricon's Board of Directors, with the assistance of its advisors, intends to solicit superior proposals during this period. In addition, Intricon may, at any time, subject to the provisions of the merger agreement, respond to unsolicited proposals that are reasonably likely to result in a superior proposal. Intricon will have the right to terminate the merger agreement with Altaris to enter into a superior proposal subject to the terms and conditions of such agreement. There can be no assurance that the solicitation process will result in a superior proposal or that any other transaction will be approved or completed. Intricon does not intend to disclose developments with respect to this solicitation process unless and until its Board of Directors determines such disclosure is appropriate or is otherwise required.

**Transaction Advisors**

Piper Sandler & Co. is serving as exclusive financial advisor to Intricon and Blank Rome is acting as legal counsel. Schiff Hardin LLP and Linklaters LLP are acting as legal counsel to Altaris.

**The Materially Incomplete and Misleading Proxy Statement**

21.     On April 25, 2022, the Board caused to be filed a materially incomplete and misleading Proxy Statement with the SEC. The Proxy Statement, which recommends that Intricon stockholders vote their shares in favor of the Proposed Transaction, fails to disclose material information to Company stockholders, or provides them with materially misleading information, concerning: (i) the Company's financial projections and the financial analyses that support the fairness opinion provided by the Company's financial advisor, Piper Sandler; (ii) potential conflicts of interest faced by Piper Sandler and Company insiders; and (iii) the "go-shop" process.

*Material Misrepresentations and/or Omissions Concerning Intricon's Financial Projections and Piper Sandler's Financial Analyses*

22. The Proxy Statement fails to disclose material information concerning the financial projections for Intricon.

23. With respect to Intricon management's projections, the Proxy Statement fails to disclose all line items underlying: (i) Adjusted EBITDA; and (ii) Unlevered Free Cash Flow.

24. The Proxy Statement also fails to disclose material information concerning Piper Sandler's financial analyses.

25. With respect to Piper Sandler's *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose a quantification of: (i) 2026 EBITDA; (ii) the inputs and assumptions underlying the discount rates ranging from 12.1% to 14.1%; (iii) Intricon's terminal values; (iv) Intricon's net debt as of March 31, 2022; and (v) Intricon's diluted shares.

26. With respect to Piper Sandler's *Selected Public Companies Analysis*, the Proxy Statement fails to disclose: (i) the individual multiples and financial metrics for each of the selected companies analyzed by Piper Sandler; and (ii) the Company's 2021 and 2022 EBITDA.

27. With respect to Piper Sandler's *Selected M&A Transactions Analysis*, the Proxy Statement fails to disclose: (i) the individual multiples and financial metrics for each of the selected transactions analyzed by Piper Sandler; and (ii) the Company's EBITDA for the twelve month period ending December 31, 2021 and December 31, 2022.

28. With respect to Piper Sandler's *Premiums Paid Analysis*, the Proxy Statement fails to disclose: (i) the transactions analyzed; and (ii) the individual premiums observed for each transaction.

*Material Misrepresentations and/or Omissions Concerning Piper Sandler's and Company Insiders' Potential Conflicts of Interest*

29. The Proxy Statement fails to disclose material information concerning the potential conflicts of interest faced by Piper Sandler.

30. For example, the Proxy Statement fails to disclose whether Piper Sandler has performed any financial services for Intricon or its affiliates in the two years preceding the date of its fairness opinion and, if so, the details of the services performed and any compensation received for such services.

31. The Proxy Statement also fails to disclose material information concerning the potential conflicts of interest faced by Company insiders.

32. According to the Proxy Statement, defendants Longval and Smith "were asked by Altaris to serve as members, and [defendant] Smith was asked by Altaris to serve as Chairman, of the Board of Managers of IIN Holdings, an affiliate of Parent, and [defendants] Longval, Gorder and Smith had the opportunity to participate in the rollover of a portion of their shares into equity of an affiliate of Parent[.]" Proxy Statement at 28. Yet, the Proxy Statement fails to disclose whether any of Altaris' proposals or indications of interest mentioned management or director participation in the combined company following the Proposed Transaction or the opportunity to "roll over" a portion of their Company shares into the surviving company.

33. The Proxy Statement also fails to disclose the details of all employment and retention-related discussions and negotiations that occurred between Company directors and officers and Altaris, including with respect to defendants Longval and Smith's future positions on the Board of Managers of IIN Holdings LLC, who participated in all such communications, when they occurred and their content. Similarly, the Proxy Statement fails to disclose the details of all discussions and negotiations that occurred between Company directors and officers and Altaris

8

concerning the opportunity for certain members of management to roll over a portion of their Company shares, including with respect to defendants Longval, Gorder and Smith, who participated in all such communications, when they occurred and their content.

*Material Misrepresentations and/or Omissions Concerning the "Go-Shop" Process*

34. According to the Proxy Statement, during the "go-shop" process, Intricon entered into confidentiality agreements with ten parties. *See id.* at 29. The Proxy Statement fails, however, to disclose the terms of the confidentiality agreements the Company entered into with ten parties during the "go-shop" period, including whether they contain a "don't-ask, don't-waive" standstill provision that is still in effect and presently precluding any party from submitting a topping bid for the Company.

35. In sum, the omission of the above-referenced information renders statements in the "Management Projections," "Opinion of Piper Sandler & Co.," "Interests of Intricon's Directors and Executive Officers in the Merger" and "Background of the Merger" sections of the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the stockholder vote, Plaintiff and the other stockholders of Intricon will be unable to make a sufficiently informed decision in connection with the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**Claims for Violation of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and Intricon**

36. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

37. The Individual Defendants disseminated the false and misleading Proxy Statement, which contained statements that, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9. Intricon is liable as the issuer of these statements.

38. The Proxy Statement was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy Statement.

39. The Individual Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

40. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction. In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy Statement and in other information reasonably available to stockholders.

41. The Proxy Statement is an essential link in causing Plaintiff and the Company's stockholders to approve the Proposed Transaction.

42. By reason of the foregoing, defendants violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

43. Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm.

## **COUNT II**

### **Claims for Violation of Section 20(a) of the Exchange Act Against the Individual Defendants**

44. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

45. The Individual Defendants acted as controlling persons of Intricon within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Intricon and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading.

46. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

47. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Proxy Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in the making of the Proxy Statement.

48. By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the Exchange Act.

49. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the Exchange Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, Plaintiff is threatened with irreparable harm.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in her favor on behalf of Intricon, and against defendants, as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction, including the stockholder vote on the Proposed Transaction, unless and until defendants disclose the material information identified above which has been omitted from the Proxy Statement;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Directing the Individual Defendants to file a Proxy Statement that does not contain any untrue statements of material fact;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: May 5, 2022  **ACOCELLI LAW, PLLC**

By */s/ Richard A. Acocelli*
Richard A. Acocelli
33 Flying Point Road, Suite 131
Southampton, NY 11968
Tel: (631) 204-6187
Email: racocelli@acocellilaw.com

*Attorneys for Plaintiff*